## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

               Plaintiff

v.                                 No. 1:14-CR-02352-001 MCA

EARL THOMAS ROMO,

               Defendant.

### <u>ORDER ON DEFENDANT'S MOTION TO SUPPRESS</u>

THIS MATTER is before the Court on Defendant's Motion to Suppress Evidence Resulting From His Unlawful Arrest and the Unlawful Search of His Home and Car, filed with this Court on December 1, 2014.  [Doc. 26]  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court DENIES Defendant's motion as to the suppression of physical evidence.  The Court GRANTS Defendant's motion to suppress statements made during the search home.

### I.  BACKGROUND

Defendant Earl Thomas Romo was a state court probationer living in Las Vegas, New Mexico.  On August 19, 2013, he had a scheduled visit with Officer Duran, his probation officer.  That was a Monday.  [TR at 19, ln 23]  On Sunday night Officer Duran received a text message from a fellow probation officer.  [TR at 16, lns 14-15; TR at 19, lns 19-23]  Officer Duran testified that the information he received was that Mr. Romo had a party the night before; there was an incident that took place where someone

was beaten up; there was an altercation between two females, that Mr. Romo was in possession of a firearm, and that law enforcement was called to the residence. [TR at 15, lns. 12-21; TR at 52, ln 25 – 53, lns 1-3]

Regarding the source of this information, Officer Duran seemed to use the terms "anonymous" and "confidential" interchangeably. [TR at 17 -18; TR at 56-57] He testified that the source asked to remain anonymous. [TR at 17, lns 8-16] He acknowledged that at the state court proceeding on the matter he had testified that the tip was anonymous and that if the questioning attorney wanted to know who it was he would have to talk to the probation officer who received the tip. [TR at 57, lns 11-19] He clarified that he used the term anonymous to imply confidentiality and that the source requested confidentiality. [TR at 18 lns 7-13] He further clarified that "anonymous" did not mean that the other probation officer did not know who the source was. [TR at 18, lns 8-17] Ultimately, he testified that he knew the identity of the source and that he elected not to name the person. [TR at 18 lns 18-25] Officer Duran acknowledged this was a change in his testimony since the state court proceeding. [TR at 57, lns 11-19]

Officer Duran testified about his contact with Mr. Romo during the August 19, 2013 appointment. Officer Duran testified that Mr. Romo informed him that Mr. Romo had police contact over the weekend. [TR at 21 ln 15; TR 62, lns 1-13] Mr. Romo explained that he had had a get together and "[s]ome girls were over." [TR at 21, lns 16-18] He informed Officer Duran that his ex-girlfriend caught him with another girl, that a verbal altercation had taken place and that his ex-girlfriend threw a bottle at him from her vehicle. [TR at 21, lns 17-23] Officer Duran testified that Mr. Romo referred to

2

something that happened between his ex-girlfriend and his current girlfriend and told Officer Duran, "It didn't take place in front of me. I didn't see what happened." [TR at 21, lns 24-25 – 22, lns 1-5] Officer Duran also asked Defendant whether he had a firearm at his residence. [TR at 25 lns 5-8] Defendant told him he did not. *Id.*

Officer Duran then handcuffed Defendant and informed him that probation was going to conduct a search of Defendant's home. [TR at 64, lns 7-16] He testified that he handcuffed Defendant for both his and Defendant's safety. [TR at 64-65] He also handcuffed him because of his gang affiliation, the information that there was a firearm in the home, because of the offense Mr. Romo was on probation for –murder involving a firearm, and because of previous parole violations. [TR at 26] Defendant and Officer Duran waited at the probation office for law enforcement to accompany them to Defendant's house. Officer Duran transported Defendant to Defendant's house in a State vehicle. [TR at 27, lns 2-5; TR at 67, lns 12-14] With the assistance of another probation officer and law enforcement, Officer Duran searched Mr. Romo's home. They found numerous empty alcohol containers throughout the house. [TR at 69, lns 16-20; Suppression Hearing, Defendant's Exhibit A]

During the search, Officer Duran located a safe in the top of a utility closet. [TR at 70, lns 6-8] He took the safe out of the closet, shook it, and heard metal on metal. He then asked a police officer to shine a light in a hole in the safe. The police officer did and indicated he could see a gun. [TR at 32, lns 8-13] After locating the gun in the safe, Officer Duran asked Defendant questions about the safe and whether there was a gun inside. [TR at 32, lns 18-21; TR at 37, lns 17-25] Mr. Romo alternately remained silent or

made certain statements in response to these questions.   Before transporting the safe Officer Duran asked Mr. Romo if the firearm was his and Mr. Romo denied it.  [TR at 37, lns 17 – 20]  He then asked Mr. Romo if the firearm was loaded.   Mr. Romo said something to the effect of "Well, there might be one in there."  [TR at 37, lns 21-15]  He then told Officer Duran "You can just talk to my attorney."  [TR at 38, lns 1-2]

Mr. Romo was transported back to the probation office where Officer Duran prepared an arrest warrant.  [TR 75, lns 2-6]  His car was searched and ammunition and empty alcohol bottles were found. [TR at 104 lns 10-25]  He was transferred to police custody.   When the safe was eventually opened it was found to contain a firearm, a suspected ball of cocaine, a blue bandana, and a felt mat.  [TR at 35, lns 7-11]

Mr. Romo was indicted by a federal grand jury on July 10, 2014. *Indictment* [Doc. 4] He was charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Defendant filed the instant motion to suppress on December 1, 2014.  [Doc. 26]  The Court held a suppression hearing on December 29, 2014 and parties submitted written closing arguments on January 8, 2015. [Docs. 36 and 37]  The Court first addresses whether the searches of Defendant's home and car were lawful.  It then addresses the suppression of Defendant's statements.

## II.    ANALYSIS

### a. Warrantless search of a probationer's home must be supported by reasonable suspicion.

The Court analyzes whether the probation searches of Defendant's home and car were lawful under the "special needs" exception to the warrant requirement.  *Griffin v.*

*Wisconsin*, 483 U.S. 868 (1987).   In *Griffin*, the Supreme Court recognized that a "probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable,'" but that the operation of a probation system by a state allowed for departure from the warrant and probable cause requirements. *Id.* at 873, 874.  Under the special needs exception, a warrantless probation search is reasonable under the Fourth Amendment when it is conducted pursuant to a valid regulation governing probationers. *Id.* at 880; *United States v. Carter*, 511 F.3d 1264, 1268 (10th Cir. 2008) ("[A] probation search will satisfy the Fourth Amendment if it was carried out pursuant to state law which itself satisfies the Fourth Amendment's reasonableness requirement.") (internal quotation marks, alteration, and citation omitted).

There is no challenge to the constitutionality of New Mexico's probation regulations here.  Rather, Mr. Romo contends that the warrantless search of his home and car were unlawful because, he alleges, probation officers conducted the searches without "reasonable cause." [Doc. 26 at 23]   Reasonable cause is a term contained within Defendant's Order of Probation, so the Court turns to that document.

Defendant's Order of Probation sets out the terms that the Court required him to acknowledge and agree to.  *See* Order of Probation [Doc. 30-2]   Defendant signed the Order indicating that he read, understood, and agreed to abide by the terms. Paragraph 6 states:

> I will permit any Probation/Parole Officer to visit me at my home or place of employment at any time.  I will permit a warrant-less search by the Officer of my person, automobile, residence, property and/or living quarters if he/she has *reasonable cause* to believe the search will produce evidence of a violation of my conditions of probation.

5

[Doc. 30-2] (emphasis added).

Defendant asks the Court to equate "reasonable cause" with probable cause when determining whether the warrantless searches of his home and car were lawful. [Doc. 26 at 22]  We decline to do so.  The New Mexico Court of Appeals specifically addressed the meaning of reasonable cause in *State v. Baca*, 2004-NMCA-049, 135 N.M. 490, 90 P.3d 509.  There, the sentencing court imposed a nearly identical condition of probation on the defendant as Mr. Romo is subject to here.  *Baca*, 2004-NMCA-049, ¶ 3.  The defendant argued that under New Mexico law reasonable cause required probable cause. *Id.* ¶ 14.  The New Mexico Court of Appeals disagreed and held "that warrantless probation searches can and must be supported by reasonable suspicion as defined in New Mexico to be an awareness of specific articulable facts, judged objectively, that would lead a reasonable person to believe criminal activity occurred or was occurring."  *Id.* ¶ 43; *State v. Bolin*, 2010-NMCA-066, ¶13, 148 N.M. 489, 238 P.3d 363.

In making this determination the court turned to *Griffin v. Wisconsin*, 483 U.S. 868 (1987) and *United States v. Knights*, 534 U.S. 112 (2001) for guidance.  *Baca*, 2004-NMCA-049, ¶¶ 22-27.  *Griffin* involved a warrantless probation search pursuant to a state regulation, which required "reasonable grounds" to search.  *Griffin*, 483 U.S. at 871.  In explaining why the search fit into the special needs exception to the probable cause requirement, the Court reasoned that requiring probable cause to search would disrupt the probation regime by reducing "the deterrent effect of the supervisory arrangement." *Id.* at 878.  It reasoned that in the context of the probation relationship, it was "unrealistic"

6

and "destructive of the whole object" to "insist on the same degree of demonstrable reliability . . . and upon the same degree of certainty of violation, as is required in other contexts." *Id.* at 879.  In *Knights*, a probationer's home was searched pursuant to a court imposed condition of probation that required the defendant to allow the search of his home "at anytime, with or without a search warrant . . . or reasonable cause." *Knights*, 534 U.S. at 114.  In this circumstance, the Court held that for a warrantless probation search to be lawful under the Fourth Amendment it must be based on reasonable suspicion. *Id.* at 121.  New Mexico's requirement that a warrantless probation search be based on reasonable suspicion thus comports with the Fourth Amendment. *See Baca*, 2004-NMCA-049, ¶ 37; *State v. Benavidez*, 2010-NMCA-035, ¶ 21, 148 N.M. 190, 231 P.3d 1132.

The New Mexico Corrections Department policy governing searches of an offender's home or property that was in place at the time Officer Duran conducted the search makes it clear that reasonable suspicion is the appropriate standard.  Policy CD-050700 (11/30/11) provides that "[s]taff of the Probation and Parole Division (PPD) should exercise their search authority when there is *reasonable suspicion* to believe that the offender is in possession of prohibited items or that there is *reasonable suspicion* to believe that a violation of his/her conditions of probation . . . has occurred." (emphasis added).  The regulation allows staff to use information learned from law enforcement, but in that case "must seek corroborating evidence before conducting the actual search." CD-050700.

In sum, in determining the legality of a warrantless probation search under the New Mexico state court Order of Probation in this case, the Court will apply the reasonable suspicion standard.  "Reasonable suspicion is a less demanding standard than probable cause" which requires "merely a particularized and objective basis for suspecting criminal activity."  *United States v. Tucker*, 305 F.3d 1193, 1200 (10th Cir. 2002) (citations omitted).

New Mexico's probation system presents a "special need" under *Griffin*.  In this context, the probation search satisfies the Fourth Amendment "if it was carried out pursuant to state law which itself satisfies the Fourth Amendment's reasonableness requirement."  *Carter*, 511 F.3d at 1268 (internal quotation marks and citation omitted). Defendant does not challenge the constitutionality of his Order of Probation or the underlying regulations, he only argues that the search was conducted without reasonable cause and was thus unlawful.  Therefore, the Court's inquiry focuses on whether Officer Duran had reasonable suspicion to conduct the warrantless probation search.

### b.  Probation officer had reasonable suspicion to search Defendant's home and car.

Defendant argues that the physical evidence obtained from the search of his home and car must be suppressed based on his assertion that the probation officers' search was not supported by reasonable cause.  [Doc. 26 at 20-26]  Mr. Romo argues that the tip received by Officer Duran from his fellow probation officer was insufficient to provide

reasonable cause to search because it was an uncorroborated anonymous tip.[1]  [Doc. 26 at

23-26; Doc. 37 at 11-14]  The Parties disagree about whether the tip was anonymous or

was made by a confidential caller.   From the evidence adduced at the suppression

hearing, it appears that the identity of the caller was known.   However, it is difficult to

tell based on the record whether Officer Duran knew that at the time that he instituted the

search.    On cross-examination Officer Duran acknowledged that at the state court

proceedings he testified that the tip was anonymous and that if they wanted to know who

it was they would have to ask the probation officer who received the tip.  [TR 57, lns 5-

24; Doc. 31 at 43, lns 18-24]  The officer's synonymous use of the terms anonymous and

confidential throughout both hearing does not help the situation.

  The Court need not determine whether the tip was anonymous, that is that the

tipster was unknown, or whether the tip was confidential and made by a citizen informant

who did not want their identity disclosed.  Rather, the Court finds that even evaluating

the tip as an anonymous one, it was shown to be sufficiently reliable to establish

reasonable suspicion of a probation violation to conduct a probation search.

  In determining whether there was reasonable suspicion of a probation violation,

"we consider both the quantity of information possessed by [the probation officers] and

its reliability, viewing both factors under the totality of the circumstances."  *Leatherwood*

*v. Welker*, 757 F.3d 1115, 1120 (10th Cir. 2014).  The Court recognizes that "[g]enerally,

anonymous tips must be corroborated and bear sufficient indicia of reliability to support

---

[1] Throughout Defendant equates reasonable cause with probable cause rather than reasonable
suspicion, thus much of his argument is aimed at the more exacting standard that does not apply here.

reasonable suspicion.   But probation searches may be premised on less reliable information than that required in other contexts." *Id.* at 1121 (internal quotation marks and citations omitted).

In *Florida v. J.L.*, 529 U.S. 266, 270 (2000), Justice Ginsberg explained that an anonymous tip alone is rarely sufficient to demonstrate the knowledge or the veracity of the informant.   However, the Court recognized "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion." *Id.*; *see also State v. Prince*, 2004-NMCA-127, ¶ 13, 136 N.M. 521, 101 P.3d 332 (examining "an anonymous tip that must be corroborated by police to establish its reliability, and create reasonable suspicion.").

In *J.L.*, an anonymous tipster called the police and alerted them that a particularly describe individual who was standing at a bus stop was carrying a gun. *J.L.,* 529 U.S. at 268.  Officers were dispatched and had no other reason to suspect the individual or his companions of illegal conduct. *Id.* An officer frisked the individual and found a gun. *Id.* at 269.  The individual was charged with a firearm offense and moved to suppress the evidence for lack of reasonable suspicion. *Id.*  In assessing whether the tip from the anonymous caller was sufficient to support reasonable suspicion, the Court compared *J.L.* to *Alabama v. White*, 496 U.S. 325 (1990). *J.L.*, 529 U.S. at 270-71. In *White*, an anonymous caller tipped the police off that a woman was carrying cocaine and provided specific information about the woman's future movements. *White,* 496 at 327.  The tip alone would have been insufficient to support reasonable suspicion.   The police corroborated the predictive information provided by the caller by watching the woman's

movements.  *Id.*  By corroborating this information, albeit about innocent activity "it bec[a]me reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine." *J.L.*, 529 U.S. at 270.

*White* was a close case with a tip having only a "moderate indicia of reliability." *J.L.,* 529 U.S. at 271; *White*, 496 U.S. at 332.  The tip in *J.L.* was not close at all as it did not provide sufficient indicia of reliability.   Unlike in *White*, where the police used the predictive information about the woman's movements to test the informant's knowledge or credibility, there was no such information in *J.L.*  529 U.S. at 271.  The fact that the tipster adequately described the subject of the tip and his location was not enough because it did not show that the tipster had knowledge of the alleged criminal activity. *Id.* at 272.   Without providing the police with a way to test the information, the tip could not be reliable.

Like *White*, Mr. Romo's case is close; however, Officer Duran sufficiently corroborated the tip to support reasonable suspicion of a probation violation for the probation search of Defendant's residence and automobile to be lawful.  Mr. Romo himself provided Officer Duran with the corroborating information.

Here Officer Duran received information that police had been called to Defendant's residence over the weekend.  Defendant confirmed that for Officer Duran, and in the course of the conversation also corroborated other information provided by the informant.   Officer Duran received information that there had been an altercation between two females, and Defendant corroborated this when he told Officer Duran that his ex-girlfriend had caught him with another woman and that there was a verbal

11

altercation.  He also referred to an incident between the two women.  He told Officer Duran that his ex-girlfriend and his girlfriend did whatever they did, but he did not witness anything.  Suppression Hearing, Defense Ex. A, p. 1.  As to the altercation, Defendant provided additional information when told Officer Duran that his ex-girlfriend threw a bottle at him.  Officer Duran testified that the tip included information that Defendant had had a party within the 48 hours prior to Defendant's scheduled visit to the probation office.  Defendant denied having a party and informed Officer Duran that "he just had some girls at his house."  [TR at 62, lns 24-25; TR at 63, lns 1-4]  The Court is not inclined to delineate what constitutes a party; however, we find that the Defendant's information that he had a few girls over is sufficient to corroborate this portion of the tip.  Officer Duran asked Mr. Romo if he had a firearm, and Mr. Romo denied it.  This is the only portion of the tip uncorroborated by Mr. Romo himself.

While the tip did not provide predictive information for Officer Duran to corroborate, the Court would not expect it to in this situation.  The tipster provided information about events that occurred within the previous twenty-four to forty-eight hours.  Officer Duran was able to test the reliability of the tip by speaking with Mr. Romo, the subject of the tip.  Mr. Romo confirmed the majority of the details of the tip.  These were not general details that could be easily known or discovered by anyone.  *See United States v. Tutor*, 240 F.3d 1292, 1297 (10th Cir. 2001) (corroboration of "innocent, innocuous information" about defendant such as appearance and address not sufficient for an anonymous tip to support reasonable suspicion); *United States v. Hauk,* 412 F.3d 1179, 1190 (10th Cir. 2005) ("General information, such as the suspect's address or the

make of the suspect's vehicles is clearly insufficient for probable cause or even reasonable suspicion.")(internal quotation marks and citation omitted)).  The information provided by the tipster here was about the events of Mr. Romo's weekend, including his presence during a verbal altercation involving two women, his knowledge that something more happened between the two women, and his contact with law enforcement.  This is far from general information.  The corroboration of this information makes it reasonable to think that the tipster had personal knowledge about Mr. Romo and events that occurred at his residence over the weekend.  *See J.L.,* 529 U.S. at 270; *see also Hauk*, 412 F.3d at 1189 (10th Cir. 2005) ("Corroboration of information other than predictive facts, such as the basis for the informant's knowledge, the circumstances under which it was obtained, and the amount of detail about the alleged criminal activity, can also justify reliance on an anonymous tip in appropriate circumstances.").

Based on the information in the tip that was corroborated by Mr. Romo, Officer Duran was aware of specific articulable facts that when viewed objectively would lead a reasonable person to believe that Defendant had violated or was in violation of his probation.[2]    It is not unreasonable to think that a get-together that includes an altercation, warrants a call from the police, and where a bottle is thrown is a party where alcohol was present.  Defendant's Order of Probation prohibited him from possessing alcohol.  [Doc. 30-2 ¶ 15] Given that the search was conducted on the Monday after the

[2] The Government also argues that Defendant's demeanor when asked whether he had a gun supports reasonable suspicion.  [Doc 36 at 8]  Testimony established that Defendant's demeanor changed not only after he was asked if he had a gun, but after the P.O. told him officers would tear Defendant's home apart looking for one.  [TR at 63]  The Court thinks that whether or not one has something to hide, a change in demeanor is not unexpected when someone is told their home will be torn apart.    Thus, this testimony does not factor into the Court's conclusion that there was reasonable suspicion.

weekend party, it was reasonable to think that evidence of this probation violation would be found at Mr. Romo's residence as required by Mr. Romo's Order of Probation.

Every part of the tip was corroborated except the possession of the firearm, but not every portion of a tip needs to be corroborated to support reasonable suspicion to search. *White*, 496 U.S. at 331 (stating the proposition "that because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity."). The Court concludes that there was reasonable suspicion to search Mr. Romo's residence for evidence of possession of alcohol and possession of a firearm. Even if there was not reasonable suspicion as to the firearm when the search began, once the probation officers witnessed the alcohol containers, the tip gained additional reliability and the search for the firearm was proper. Ideally, Officer Duran would have had more information about the firearm, but, as the Supreme Court has recognized "[i]n some cases – especially those involving drugs or illegal weapons – the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society." *Griffin*, 483 U.S. at 879. The information Officer Duran had here was sufficient to give him reasonable suspicion to search.

Defendant cites to *State v. Prince* in support of his argument that the tip was unreliable. [Doc. 26 at 25] There, the court concluded that an anonymous tip did not provide sufficient information to support reasonable suspicion to expand the scope of a traffic stop to investigate for drugs. Law enforcement had information that another police

department suspected [the d]efendant *might* be involved with people . . . who *might* be manufacturing and trafficking methamphetamine."   *Prince*, 2004-NMCA-127, ¶ 12 (emphasis original).  The officer also knew that the defendant was driving a certain route in a certain vehicle and for an unknown reason thought the defendant "might" have methamphetamine.  *Id.*  Although he had conducted a three month investigation, he had no other facts.  *Id.*  The court reasoned that the case was missing "crucial details and particularized information about the alleged criminal activity that was occurring."  *Id.* at 17.   That the defendant was associating with possible drug dealers and "for some unknown reason he might have drugs in his possession" was not enough.   *Id.* The "generalized suspicions and mere corroboration of innocent activity, even if not readily available to the public, [was] insufficient to create reasonable suspicion for an investigatory detention."  *Id.*

First, we note, that *Prince* is not a probation case and that "probation searches may be premised on less reliable information than that required in other contexts." *Leatherwood*, 757 F.3d at 1121.   Second, as explained above, here there is more corroborating information than in *Prince* where the only corroborating information was that the defendant was indeed driving a particular route.   Here, the corroboration of the information in the tip by Defendant gave the tip sufficient reliability.   "When it comes to probation searches, 'to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts' would undermine the probation relationship."  *United States v. Carter*, 511 F.3d 1264, 1269 (10th Cir. 2008) (quoting *Griffin*, 483 U.S. at 879).

The search of Defendant's home was lawful because it was done in compliance with the New Mexico's requirement that warrantless probation searches be supported by reasonable suspicion.  *Baca*, 2004-NMCA-049, ¶ 52 (holding warrantless probation search as authorized by condition of probation and based on reasonable suspicion was reasonable under the Fourth Amendment).  This requirement comports with the Fourth Amendment.  *Knights*, 534 U.S. at 593. Before searching, Officer Duran obtained corroborating information from Defendant himself that gave the officer reasonable suspicion that a probation violation had occurred or was occurring and that evidence of the violation could be found at Defendant's residence.[3] Defendant signed the Order of Probation permitting such searches.

For the same reasons, the search of Defendant's car was lawful.  The Order of Probation explicitly states that Mr. Romo permitted the warrantless search of his automobile when his probation officer has reasonable cause to believe the search will produce evidence of a violation of his conditions of probation.  The probation officer searched Mr. Romo's car after discovering the firearm and alcohol containers in Mr. Romo's residence.  At that point it was evident that Mr. Romo was likely in violation his probation.  The discovery of these items certainly gave probation officers reasonable cause to search his vehicle for related violations.

---

[3] To the extent Defendant relies on the Corrections Department regulations requiring corroboration, [Doc. 26 at 25], and to the extent it may apply, the Court's analysis of whether there was reasonable suspicion incorporates the discussion of corroboration which allowed the tip to give rise to reasonable suspicion.  Defendant cites CD-052901(G), which, while nearly identical to CD-050700, governs searches conducted by probation officers who are part of Community Response Teams.

Defendant further argues that even if the search of his residence was conducted pursuant to reasonable cause, the search of the safe violated the Fourth Amendment.[4] [Doc. 26 at 27; Doc. 31 at 8; Doc. 37 at 14]  He argues that there was no probable cause to believe that there was contraband in the safe and that he had an expectation of privacy in the safe in his home.  [Doc. 37 at 15]  Again, Officer Duran was only required to have reasonable suspicion to search Defendant's home.  *Baca*, 2004-NMCA-049, ¶ 38**;** CD-050700.  Defendant, a probationer, had a lower expectation of privacy and lesser constitutional protections.  *Griffin,* 483 U.S. at 875; *Baca,* 2004-NMCA-049, ¶ 23.  He had signed the Order of Probation agreeing to allow the search of his residence and property when probation officers had reasonable cause to believe that evidence of probation violations could be found. Officer Duran had reasonable suspicion to search Defendant's home for evidence of probation violations, including the possession of a firearm.  Firearms are often kept in safes.  [TR at 126, lns 21-25 – 127, lns 1-4]  It was not unreasonable of the Officer Duran to search inside the safe to determine whether a firearm was present.

### III.    Physical evidence obtained as the result of the search of Defendant's home is not the fruit of an illegal arrest.

Defendant argues that "[a]ny items that the officials took from Mr. Romo's house or car should be suppressed because they are the product of an illegal arrest."  [Doc. 26 at 8]  He argues that he was illegally arrested when placed into handcuffs at the probation

---

[4] The Government contends that Defendant abandoned the safe when Defendant said that the safe was not his.  [Doc. 30 at 14]  However, the P.O. testified that he took the safe down, shook it, and looked inside it before Defendant made any statements regarding the safe.  [TR at 32]  Thus, even if the Court were to consider the safe that was in Defendant's closet abandoned, it appears the search took place prior to the alleged abandonment.

office.  [Doc. 37 at 1-4] Defendant contends that Officer Duran was able to enter his house and his car because the officer took Defendant's keys after illegally arresting him to gain entry to the house. [Doc. 26 at 9]

The Government has two responses.  It denies that Mr. Romo was illegally arrested.  Rather, it asserts he was subject to an investigatory detention.  It argues that even if he was illegally arrested "the search of the residence or vehicle did not flow from and was not the product of Defendant's detention."  [Doc. 36 at 6; Doc. 30 at 18]  The Government points to Defendant's Order of Probation under which Defendant was required to permit probation officers to search when, as here, there was "reasonable cause to believe that the search will produce evidence of a violation of [his] conditions of release."  [Doc. 30 at 17]  The Government asserts that "[i]t was reasonable for the PPOs to first obtain the key to Defendant's residence and car from Defendant and then enter by the use of Defendant's keys."  [Doc. 36 at 6]

The Court agrees with the Government on the second point.  The search of the residence did not flow from Defendant's detention.  Per the terms of his Order of Probation Defendant agreed to permit his probation officer to search his residence if he had reasonable cause to believe the search will produce evidence that Defendant was in violation of his conditions of probation.  Neither party has cited to New Mexico regulations governing the entry into a probationer's property to conduct such a search or provided a case on point.  Nonetheless, under Defendant's Order of Probation, whether or not Defendant was arrested at the time of the search appears to be immaterial.    With reasonable cause, the probation officers were permitted to search.  Defendant accepted

18

this term on the date that he signed the Order of Probation agreeing to abide by it.  This occurred well before the alleged unlawful arrest.

It is not evident that Defendant was required to be present for the search. Nor is it evident that Defendant was required to be the person who let the officers in to search.  In fact, the New Mexico Court of Appeals has held that a parole officer's forcible entry into a parolee's home did not violate the Fourth Amendment.  *State v. Benavidez*, 2010-NMCA-035, ¶ 26, 231 P.3d 1132.  Looking at CD-050700, that court noted that "[n]othing in the PPD policy restricts the conduct of a [probation] search." *Id.*[5]  There, the parole officer was lawfully investigating a suspected parole violation and to do so needed to enter the defendant's house.  *Id.* The officer had reason to believe that the defendant was inside, and the officer knocked for twenty minutes.  *Id.*  The court reasoned that because the defendant did not open the door, forced entry appeared to be the only alternative.  *Id.*  The officer kicked in the door, and the court concluded the entry was reasonable.  *Id.*  In light of the court's conclusion that kicking in the door was a reasonable way to gain entry to search, it follows that here obtaining Defendant's keys was a reasonable way to gain access to the residence for the lawful search.

As Defendant recognizes, only evidence derivative of a Fourth Amendment violation is subject to suppression. *See United States v. Shareef*, 100 F.3d 1491, 1508 (10th Cir. 1994).  [Doc. 26 at 26]  Here, the search was conducted in compliance with the Order of Probation's requirement that it be based on reasonable suspicion that evidence of a probation violation could be found.  Although the probation office gained entry with

---

[5] The same policy governs probationers and parolees.

a key obtain from Defendant while he was detained, in light of the holding in *Benavidez*, this appears to be a reasonable mode of entering, and not the only one available to probation.

**IV.    Defendant's statements shall be suppressed.**

While the Court concludes that the search of Defendant's home did not stem from an illegal arrest because it was conducted based on reasonable cause and pursuant to condition of probation to which Defendant previously agreed to, this logic does not apply to Defendant's statements.  Defendant's statements made after being transported by a probation officer in a state vehicle while handcuffed and escorted by law enforcement officers to his home where he remained handcuffed and his home was searched by probation and law enforcement and his statements were made in response to direct questions during the search must be suppressed.

Defendant argues that he was subject to illegal arrest when handcuffed at the probation office and transported to his residence.  He argues that the alleged arrest was illegal because it was done in violation of New Mexico Code and regulations and absent probable cause.  Because he was illegally arrested, Defendant contends statements made as the result of the unlawful arrest must be suppressed.  The Government responds that Defendant was not under arrest, but was subject to investigatory detention for fifteen minutes – the time that allegedly elapsed between Officer Duran placing Defendant in handcuffs and the probation officers discovering alcohol containers at Defendant's residence.  The Government contends that this detention is lawful under the special needs exception.

20

While the Government invokes the special needs exception, that exception allows for probation officers to act under state regulations that comport with the Fourth Amendment. The Government cites *Griffin* for its assertion, but *Griffin* is a case about a search, not a seizure, and one that was done in compliance with a state regulation. The Government does not provide the Court with a citation to any regulation allowing probation officers to handcuff and transport probationers as part of an investigation based on reasonable suspicion into alleged probation violations.

Defendant provides the Court with cases where defendants have been considered under arrest when they have been transported from a place they are entitled to be, like their homes, to the police station for investigation, or where they were not free to leave during the course of an investigation. *See, e.g, Hayes v. Florida*, 470 U.S. 811 (1985); *Florida v. Royer*, 460 U.S. 491 (1983); *United States v. Gonzalez*, 763 F.2d 1127 (10th Cir. 1985). In his pleadings, Defendant clearly cites these cases, but the Government does not address them in its response or closing argument. Further, the Government appears to focus only on the issue of physical evidence and does not acknowledge that Defendant also seeks to suppress statements allegedly obtained as the result of an unlawful seizure.

There is no argument that the probation officer had probable cause to arrest Defendant at the time Defendant was handcuffed and transported. Nor does the United States contend that Defendant was arrested in compliance with NMSA 1978, Section 31-21-15 which governs the return of probation violators or taken into custody in compliance with any probation regulation. Rather, the United States asks the Court to

21

analyze whether the probation officer's seizure of Defendant, which it categorizes as an investigative detention was so invasive as to become a de facto arrest.

In *Dunaway v. New York*, 442 U.S. 200 (1979) police had reasonable suspicion that an individual was involved in a crime. Police located him at a neighbor's house. *Id.* at 212. He was not questioned where he was found, but was brought to the police station where he was placed in an interrogation room and questioned. *Id.* at 212. The state conceded that it lacked probable cause to arrest the petitioner prior to the interrogation, but argued the seizure did not amount to an arrest and was permissible under the Fourth Amendment because the police had reasonable suspicion that the petitioner had information about a serious crime. *Id.* at 207. The Court rejected that logic. The Court reasoned that these facts were not similar to a brief intrusion as contemplated by *Terry* and that "any 'exception' that could cover a seizure as intrusive as that in [that] case would threaten to swallow that general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Id.* at 213. The Court reiterated the conclusion "that detention for custodial interrogation – regardless of its label – intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." *Id.* at 216. Further, the *Dunaway* Court held that even though *Miranda* had been given there, because there was no break in the causal connection between the illegal detention and petitioner's statements, the statements must be suppressed. *Id.* at 218-219 (citing *Brown v. Illinois*, 442 U.S. 590 (1975)).

The cases cited by Defendant follow *Dunaway* and its progeny. *See Hayes*, 470 U.S. 811; *Gonzalez*, 763 F.2d 1127 (10th Cir. 1985) (holding de facto arrest where law

enforcement coerced individual at a traffic stop to follow to the office to the police station where there were other alternatives to pursue investigation).  Defendant urges the Court to follow *Hayes*, which declared that "the line is crossed when the police, without probable cause or a warrant forcibly remove a person from . . . a place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes."  *Hayes,* 470 U.S. at 816.  Defendant's case is different in that he was taken from the probation office to his home for investigative purposes.  However, the Court is persuaded that this was done based only on reasonable suspicion, and that because he was taken in handcuffs and under guard to his home where he was subjected to questioning, *Hayes* is instructive.

The Government points the Court to two cases in which individuals were handcuffed and detained, but were not held to be subject to de facto arrest.  *See State v. Skippings*, 2014-NMCA-117, 338 P.3d 128; *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996).  These cases are distinguishable in that they are both cases involving traffic stops and the individuals, while handcuffed, were not transported elsewhere and questioned.  The Government contends that transporting Defendant was a reasonable intrusion given the investigation, but provides no authority.

While recognizing that Defendant was a probationer with reduced constitutional protections, without authority to the contrary, the Court nonetheless holds that Defendant was seized within the meaning of the Fourth Amendment when he was handcuffed, locked in the back of a state vehicle, accompanied by law enforcement and transported from the probation office to his home for the purpose of investigating potential probation

violations.  The Court notes that Defendant was not just detained at the probation office while the probation officer conducted the search.  Nor is it that he was handcuffed -- handcuffing alone does not always raise a detention to the level of arrest.  *Skippings*, 2014-NMCA-117, ¶¶ 18-20; *Shareef*, 100 F.3d at 1502 (reiterating that "police officers should not be required to take unnecessary risks in performing their duties" and "the use of . . . handcuffs . . . does not necessarily transform a *Terry* detention into a full custodial arrest."). Importantly, he was transported and subjected to what amounted to a custodial interrogation, albeit in his home rather than at a police station.  Reasonable suspicion that a probation violation occurred or was occurring is insufficient to justify a seizure this restrictive where Defendant is subjected to interrogation, and even had he received *Miranda*, this would not be sufficient to protect his Fifth Amendment rights.  *See Dunaway,* 442 U.S. at 216. Even if the Court were to find this a proper investigatory detention as the Government urges, in the absence of valid probation regulations to the contrary, there was no testimony that Defendant was *Mirandized* and a lack of *Miranda* warnings would further require suppression.  *See Skippings*, 2014-NMCA-117, ¶ 22 ("[D]uring an investigatory detention, a defendant may also be subject to custodial interrogation, and if that is the case *Miranda* warnings need to be given."); *Yarborough v. Alvarado*, 541 U.S. 652, 661-62, 667-78 (2004) (discussing custodial interrogation in the context of *Miranda* custody test).  For these reasons, Defendant's statements made in response to questioning regarding the safe and the contents of the safe while at his home must be suppressed.

## V.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Suppress Evidence Resulting From His Unlawful Arrest and Unlawful Search of His Home and Car [Doc. 26] is **DENIED** as to physical evidence obtained as the result of those searches and **GRANTED** as to statements made while at his home in response to questions about the safe and contents of the safe.


SO ORDERED this 2nd day of December, 2015.



_____
M. CHRISTINA ARMIJO
Chief United States District Judge